**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| ELLEN MAYO, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | **CASE NO. 3:13-CV-00468** |
| v. ) | **JUDGE CAMPBELL / KNOWLES** |
| ) | |
| BANK OF AMERICA, ) | |
| ) | |
| DEFENDANT. ) | |

**REPORT AND RECOMMENDATION**

**I.  Introduction and Background**

This matter is before the Court upon cross-Motions for Summary Judgment.  Docket Nos. 42, 61.

Plaintiffs John and Ellen Mayo filed this action in the Chancery Court for Davidson County, Tennessee on April 8, 2013.[1]  Plaintiff alleged that Bank of America "intentionally falsely reported the credit history of spouses of its credit card holders and made other legal demands (for repayment and other demands) of spouses of its credit card holders . . . when it has no evidence that any contract exists between DEFENDANT and the [Plaintiff] now, or at any time the past."  Docket No. 1 at 6.  This action was removed from the Chancery Court of Davidson County on May 16, 2013 pursuant to 28 U.S.C. §§ 1441 and 1446.  *Id.* at 1.  Defendant invoked this Court's subject matter jurisdiction on the basis of both diversity and federal question.

---

[1] John Mayo was terminated as party in this action on October 21, 2013, by an Order entered by Judge Campbell.  Docket No. 24.  Accordingly, the only remaining Plaintiff is Ellen Mayo.

In her Complaint, Plaintiff asserts that Bank of America damaged her credit by falsely reporting to credit reporting agencies that she was a co-debtor on a credit card allegedly issued solely to her husband, John P. Mayo. Docket No. 1. Plaintiff avers that she was not a party to the contract between Defendant and John P. Mayo; that she had not signed any agreement with Defendant; that she was not personally liable for the account under Tennessee law; and that she had not used the credit card at issue. *Id.* at 10, 16. Plaintiff contends that she was wrongly held individually liable for her spouse's debts; that her credit rating has been unfairly damaged by Defendant's reporting of her to the credit bureaus; and that Defendant cannot produce the signed credit card application because it intentionally destroyed the contract at issue. *Id.* at 12. Plaintiff essentially argues that because Defendant cannot produce a credit card application bearing her signature, she has no liability for the credit card debt, such that Defendant's reporting her to the credit bureaus constitutes common law defamation and is an example of Defendant creating its own contract law.

Defendant previously filed a Motion to Dismiss, essentially arguing: (1) there is no private right of action against a furnisher of credit information under 15 U.S.C. § 1681s-2(a); (2) Plaintiff failed to state a cognizable claim under 15 U.S.C. § 1681s-2 because there is no assertion that Plaintiff disputed the information to the credit reporting agencies or that Defendant received notice from any credit reporting agency of a dispute and failed to investigate it; and (3) Plaintiff's claim is barred by the statute of limitations contained in 15 U.S.C. § 1681(p). Docket No. 18. That Motion was ultimately denied, at least with regard to the claims of Ms. Mayo. Docket Nos. 18, 24.

With regard to Plaintiff's instant Motion for Summary Judgment (Docket No. 42),

Plaintiff has filed her Motion and a document entitled "Concise Statement of Facts in Support of Motion for Summary Judgment" (Docket No. 43), which contains two "factual" statements, neither of which has a proper citation to the record, as required by Local Rule 56.01(b).[2] Plaintiff did not file a supporting Memorandum of Law, as required by Local Rule 7.01(a).[3]

As grounds for her Motion, Plaintiff argues: (1) "Normal Principles of Contract Law apply to Bank of America," and (2) "Normal Principles of Common Law Defamation apply to Bank of America." Docket No. 42. Plaintiff also contends:

> **DEFENDANT has admitted** in its letter (EXHIBIT A) to the deceptive and unfair business practice of destroying the contracts with its customers after only 25 months. DEFENDANT seeks to

---

[2] Local Rule 56.01(b) states:

> **(b) Concise Statement of Facts.** In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the *Federal Rules of Civil Procedure* shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by specific citation to the record. After each paragraph, the word response shall be inserted and a blank space shall be provided reasonably calculated to enable the non-moving party to respond to the assertion that the fact is undisputed.

[3] Local Rule 7.01(a) states:

> **(a) Filing.** Every motion that may require the resolution of an issue of law, in either civil or criminal cases, when filed shall be accompanied by a memorandum of law citing supporting authorities and, where allegations of fact are relied upon, affidavits or depositions in support thereof. The memorandum submitted in support of a motion shall contain at the outset a short and concise statement of the factual and legal issues which justify the grant of the relief sought. No memorandum shall exceed twenty-five (25) pages without leave of Court.

> comingle the liability of spouses where no liability might ever
> exist. Spouses may have never signed the contracts that have been
> destroyed by DEFENDANT.

*Id.* (emphasis and capitalization original).

Defendant has filed a Response to Plaintiff's Motion (Docket No. 47), as well as the Affidavit of Sandra Kaminski (Docket No. 46-1). Defendant responds that Plaintiff's Motion fails to establish that she is entitled to a judgment as a matter of law, because Plaintiff has not submitted any supporting materials, other than a letter that was an Exhibit to the original Complaint. Docket No. 47. Defendant also contends that the absence of a contract bearing Plaintiff's signature "does not establish that a contract did not exist or that plaintiff, through her actions and her exercise of control over the account, is not estopped to deny its existence." *Id.* Defendant further responds:

> Likewise, to the extent that the claim is for defamation, the pleadings and the letter do not establish liability for defamation. This is clearly disputed. Plaintiff has not produced a credit report that she says defamed her. Nowhere in the records is any such report. Further in answer to discovery, [Plaintiff] has not produced any credit report. In addition, the motion fails to address the various affirmative defenses raised by [Defendant], including that the state law defamation claims are preempted and are barred by the applicable statute of limitations. Also, the motion fails to address what actions by creditors, if any, are related to [Defendant's] reporting, rather than plaintiff's generally poor credit. . . .
> Further, the relief purportedly sought makes no sense. . . . until there is some determination as to what was actually reported to the credit reporting agencies, some determination as to whether what was reported was true, and a determination of whether and when the plaintiff sustained damages as a result of the information reported, there is no basis for any such relief demanded . . . Plaintiff asks for damages, but has not provided any evidence that she has been damaged. . . . As shown in the affidavit of Kaminski, Plaintiff's credit report was poor. She had too much revolving credit. She was over-extended on credit cards. Her revolving debt

4

> was too high. Her credit reports reflected delinquencies, accounts in collection and account write-offs. To the extent that she claims some other creditor refused to deal with her, there are numerous other factors that enter that equation other than [Defendant] reporting that her husband had missed two payments on a joint credit card.

*Id.*, p. 2-4 (footnote omitted).

Defendant additionally asserts that: (1) record-keeping requirements are often mandated by regulatory agencies; and (2) records do not reflect that Defendant received the original records from its predecessor (since the account originated with Defendant's predecessor). *Id.*, p. 4.

Defendant has also filed a Response to Plaintiff's Concise Statement of Facts, along with its own Statement of Additional Undisputed Facts. Docket No. 45. Plaintiff has not responded to Defendant's Statement of Additional Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond to Defendant's Statement of Additional Undisputed Facts "within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."

Regarding Defendant's Motion for Summary Judgment (Docket No. 61), Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 62), a Statement of Undisputed Facts (Docket No. 63), Excerpts from Plaintiff's April 24, 2014 Deposition (Docket No. 64-1), the Affidavit of Sandra Kaminski (Docket No. 64-2), and documents that Plaintiff had produced with Discovery (Docket No. 64-3, previously filed as Docket No. 88-2, pgs. 1-10). As grounds for its Motion, Defendant argues: (1) Plaintiff's state law defamation claim is preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681(t)(b)(1)(F); (2) the one-year statute of limitations in TCA 28-3-104(a)(1) applies and precludes recovery for any damages resulting

from alleged false reporting prior to April 2012; and (3) Plaintiff has sustained no ascertainable loss or other costs associated with the reduction of credit and therefore cannot recover for any loss of credit under Tennessee law. Docket No. 61.

Plaintiff has filed a Response to Defendant's Motion (Docket No. 69), but has not responded to Defendant's Statement of Undisputed Facts. As noted above, pursuant to Local Rule 56.01(g), Plaintiff's failure to respond to Defendant's Statement of Undisputed Facts "within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."

In her Response, Plaintiff reiterates her contention that no contract for the account bearing her signature exists,[4] such that she is continuing to be wrongly held jointly liable for her husband's account, which has resulted in defamation, humiliation, and damage to her. Docket No. 69. Plaintiff also reiterates her contention that Defendant "intends to continue to commit simple common law defamation and liable of PLAINTIFF by continuing to substitute its own novel theory of contract law that is in direct violation of the TENNESSEE CONSUMER PROTECTION LAW as well as common law contract law." *Id.*, p. 2 (capitalization original). Plaintiff additionally argues that she is protected by the "TENNESSEE CONSUMER PROTECTION LAW and RELATED LAWS 2010," § 47-18-805, Liability of Spouse, which states that, "other than to the extent common law liability is imposed for furnishing necessaries," a spouse is not liable for any debts, charges, or accounts where the spouse has not signed the

---

[4] For purposes of its Motion for Summary Judgment, Defendant does not dispute that Plaintiff did not sign the application, as the application was submitted to the City Bank-Honolulu and ultimately assigned to Defendant, but no application was sent to Defendant at the time of the assignment and Defendant's records do not contain a copy of the application. *See* Docket No. 61.

6

application for credit. *Id.*, p. 1 (capitalization original). Plaintiff asks, *inter alia*, that Defendant's Motion be denied; that she be permitted to present expert witness testimony to establish her damages; that a jury of her peers hear this case; and that Defendant's "deceptive business practice" of destroying the contract records of its customers after twenty-five months be stopped. *Id., passim*.

For the reasons to be discussed below, the undersigned recommends that Plaintiff's Motion for Summary Judgment be DENIED, and that Defendant's Motion for Summary Judgment be GRANTED.

## II. Undisputed Facts[5]

The credit card account at issue was obtained from City Bank-Honolulu on October 10, 1994. Docket No. 46-1, Affidavit of Sandra Kaminski, Defendant's Vice President, Senior Operations Consultant ("Kaminski Aff."), ¶ 4; Docket No. 64-2, second Affidavit of Sandra Kaminksi ("2nd Kaminski Aff."), ¶ 4. Subsequently, the account was converted to MBNA, which is now Defendant. *Id.* Records reflect that, from the time the account was converted to MBNA, John P. Mayo was listed as the primary account holder and Ellen P. Mayo was listed as the co-applicant. Kaminski Aff., ¶ 5. Defendant's records do not contain a copy of the application that was submitted to City Bank-Honolulu, nor do Defendant's records reflect that it received the account application at the time the account was converted (*Id.*); however, Defendant "booked it as a joint account, billed it as a joint account, sent multiple cards, communicated with both Ellen Mayo and her husband, John, about the account, and reported it to [Credit Reporting Agencies]

---

[5] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

7

as a joint account" (2nd Kaminski Aff., ¶ 5).

Since the date of conversion, all monthly statements have been addressed to John P. Mayo and Ellen P. Mayo. Kaminski Aff., ¶¶ 6, 14. Plastic cards were also sent to both John P. Mayo and Ellen P. Mayo. *Id.*, ¶ 6. Defendant's records reflect that the cards were activated, but it cannot determine by whom, as only one activation via a phone call from the home phone number is required to activate both cards. *Id.* Defendant's records reflect joint liability on the account. *Id.,* ¶ 14.

Defendant's records reflect that, as early as December 1998, a merchant contacted it to verify a credit transaction. *Id.*, ¶ 7. Defendant spoke with Plaintiff, described as "cardholder 2," to confirm the merchant charge, and Plaintiff advised Defendant that the specific charge was authorized. *Id.*

On September 5, 2003, John P. Mayo and Ellen P. Mayo were sent a notice of change in terms for the account and were provided an opportunity to opt out. *Id.*, ¶ 8. Plaintiff contacted Defendant to discuss the change in terms and possibly closing the account. *Id.* At that time, the account balance was approximately $23,000. *Id.* Plaintiff was transferred to the account retention division. *Id.* In order to discuss an account with a customer, Defendant's personnel are required to ask specific personal questions to identify the customer, such as social security number, address, or date of birth, to ensure that personnel are talking to the customer. *Id.*, ¶ 9. During the September 5, 2003 call, Plaintiff supplied financial information regarding home equity, savings, and investments. *Id.* As part of an account review, Defendant performed a risk assessment, which included a review of Plaintiff's credit report. *Id.* On that date, Plaintiff's credit report reflected a FICO score of 531, a charged off account from other creditors, and

accounts in collection. *Id.* Defendant did not take action at that time because it was concerned that by doing so, it would negatively impact Plaintiff's willingness to pay. *Id.*

On October 26, 2004, John P. Mayo contacted Defendant and inquired as to how to remove a jointly liable party from the account. *Id.*, ¶ 11. In response, Defendant sent John P. Mayo and Ellen P. Mayo a letter dated the same day, acknowledging the request to delete a name from the account. *Id.* The letter stated that "to delete the name and relieve that person of financial responsibility for the balance, authorization is needed from both customers." *Id.* The letter continued by advising that the person assuming full responsibility must qualify individually for the account and that that qualification would include a review of credit bureau reports. *Id.* A form to be filled out and returned to Defendant accompanied the letter. *Id.* That form was not returned to Defendant and Plaintiff was therefore not relieved from liability on the account; she remained jointly liable. *Id.*, ¶ 12.

On February 5, 2007, Plaintiff called Defendant and stated that an address had been changed on the account without authority. *Id.*, ¶ 13. At that time, Plaintiff was transferred to the fraud group, identified by date of birth and home phone number, and she provided the correct address. *Id.*

Defendant's records reflect that, as far back as 2007 (which is as far back as Defendant can verify), payments on the account were made via checks issued by Plaintiff from her Am South checking account ending in 7720. *Id.*, ¶ 15; 2nd Kaminski Aff., ¶ 6.

In February 2011, the account was in default and an account review was undertaken. *Id.*, ¶ 16; *see also,* 2nd Kaminski Aff., ¶ 7. The review revealed that: (1) the household revolving debt was approximately $83,000; (2) both John P. Mayo and Ellen P. Mayo utilized 12 credit

9

cards that were 53% utilized; and (3) payments on the accounts over the last 12 months were flat. Kaminski Aff., ¶ 16. Shortly thereafter, Defendant negotiated a payment reduction plan on the account. *Id.*, ¶ 17. In so doing, Defendant obtained credit information on both responsible parties to determine eligibility. *Id.* Based upon the consumer financial information obtained, including credit reports and information provided by the customers, the parties agreed on a fixed payment plan. *Id.* Basically, the interest rate was lowered and the account privileges were terminated. *Id.*

In 2011, Plaintiff was told by her husband to stop making payments on the account. Docket No. 61-1, Deposition of Ellen P. Mayo ("Plaintiff's Dep."), 37:1, 15-18. In February 2011, Defendant reported the account as delinquent due to missed payment. 2nd Kaminski Aff., ¶ 8.

Defendant has reported the account as a joint obligation of Mr. and Mrs. Mayo since the date of conversion. *Id.* Prior to March 2011, Plaintiff did not take the position or assert that she was not jointly liable on the account. *Id.*, ¶ 9; Kaminski Aff., ¶ 18.

### III. Analysis

**A. Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**B. The Case At Bar**

With regard to Plaintiff's Motion, Plaintiff has adduced no evidence in a form required by Fed. R. Civ. P. 56, to support her claims.[6] Accordingly, Plaintiff has failed to demonstrate

---

[6] Plaintiff's only submitted evidence is a copy of an April 7, 2011, letter from Defendant that was attached to the original Complaint.

that she is entitled to a judgment as a matter of law on either her contract or defamation claims, and her Motion for Summary Judgment should be DENIED.

Regarding Defendant's Motion, the undisputed facts establish, *inter alia*, that, from the time the account was converted, Defendant "booked it as a joint account, billed it as a joint account, sent multiple cards, communicated with both Ellen Mayo and her husband, John, about the account, and reported it to [Credit Reporting Agencies] as a joint account." It is also undisputed that, since the date of conversion, all monthly statements have been addressed to John P. Mayo and Ellen P. Mayo; that, as far back as 2007 (which is as far back as Defendant can verify), payments on the account were made via checks issued by Plaintiff from her Am South checking account ending in 7720; and that, prior to March 2011, Plaintiff did not take the position or assert that she was not jointly liable on the account. It is further undisputed that on September 5, 2003, Plaintiff contacted Defendant to discuss the change in terms contained in the notice she received and to possibly close the account, and she supplied identifying and financial information to Defendant for verification and so Defendant could perform a risk assessment, which included a review of Plaintiff's credit report. Plaintiff's credit report as of September 5, 2003 reflected a FICO score of 531, a charged off account from other creditors, and accounts in collection.

The undisputed facts further demonstrate that the account at issue was delinquent in February 2011, and that, at that time, Plaintiff's household revolving debt was approximately $83,000, both Plaintiff and John P. Mayo used 12 credit cards that were 53% utilized, and payments on the accounts over the previous 12 months were flat. In February 2011, Defendant reported the account as delinquent due to missed payment.

In her Deposition, Plaintiff testified that her claim against Defendant is that Defendant damaged her by reporting to the credit reporting agencies that the account at issue was joint and in arrears because that negatively impacted her credit. Plaintiff's Dep., 47:1-48:17. Plaintiff also testified that she was unable to specifically quantify monetary damages that resulted from Defendant's reporting to the credit reporting agencies that the account at issue was joint and in arrears and/or from the negative impact to her credit. *Id.*, 81:1-83:9. Plaintiff acknowledged in her Deposition that the account in question, was, in fact, in arrears. *Id.*

While Plaintiff argues that she does not assert a Fair Credit Reporting Act ("FCRA") claim,[7] and acknowledges that she could not prevail upon such an action,[8] that is, in fact, the crux of her Complaint. Although Plaintiff characterizes her claims as "contract" and "defamation," the basis for her Complaint is that Defendant damaged her by its allegedly false reporting that the account in question was joint (false, she claims, because Defendant cannot produce a copy of the credit account application contract bearing her signature) and was in arrears, and she argues that this allegedly false reporting defamed her and negatively impacted her credit (resulting in tangential damages such as increased insurance rates, decreased credit

---

[7] *See* Docket Nos. 42, p. 3; 69, p. 3.

[8] Plaintiff states:

> DEFENDANT has continued to seek refuge from liability of intentionally and maliciously defaming and libeling the PLAINTIFF under the Fair Credit Reporting Act (FCRA) even though no claims were made under this law. PLAINTIFF is well aware that by the lobbying of Congress and the resulting FCRA does not allow a cause of action against credit agencies or the banks under FCRA.

Docket No. 42, p. 3.

limits, etc.). Thus, her Complaint turns entirely on Defendant's act of reporting to the credit reporting agencies. Plaintiff's claim is, on its face, an FCRA claim, and it is plainly preempted by the FCRA.

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. provides in relevant part:

> It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.

15 U.S.C. § 1681(b).

As this Court has stated:

> The FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies.

*Westbrooks v. Fifth Third Bank*, 2005 W.L. 3240614 at *3 (M.D. Tenn.) (Campbell, J.), *citing Carney v. Experian Info. Solutions, Inc*., 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999).

In the case at bar, it is undisputed that Defendant is a furnisher of information to consumer reporting agencies. *See Carney* , 57 F. Supp. 2d at 501 (W.D. Tenn. 1999) ("A 'furnisher of information' is 'an entity . . . which transmits information concerning a particular debt owed by a particular customer to consumer reporting agencies . . . .'"). Thus, its obligations are set forth in 15 U.S.C. § 1681s-2, which is headed "Responsibilities of Furnishers of Information to Consumer Reporting Agencies." Section 1681s-2(b) provides in relevant part:

> Duties of furnishers of information upon notice of dispute. (1) In general. After receiving notice pursuant to [15 U.S.C. §1681i (a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to [15 U.S.C. § 1681i(a)(2)];
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –
>
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

In the case at bar, Plaintiff has asserted state law libel claims which are based entirely upon the reporting of information to the credit reporting agencies. That conduct is unquestionably regulated under 15 U.S.C. § 1681s-2.

As this Court stated in *Westbrooks*, two sections of the FCRA preempt state law claims. *Westbrooks* at *5-6. First, "[a[ll state law claims that do not allege willfulness are preempted by § 1681h(e), and any surviving claims alleging willfulness are preempted under § 1681t(b)(1)(F) if they involve a subject matter regulated under § 1681s-2." Docket No. 62, p. 5. Section

1681h(e) provides in relevant part:

> Except as provided in section 1681n and 1681o of this title no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, . . . based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Thus, § 1681h(e) preempts Plaintiff's defamation claim, at least to the extent that the information was furnished without malice or willful intent to injure Plaintiff.

Additionally, § 1681t(b)(1)(F) states in relevant part:

> No requirement or prohibition may be imposed under the laws of any State –
>
> (1) with respect to the subject matter regulated under –
>
> . . .
>
> (b) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.
> . . .

Plaintiff's allegations plainly pertain to subject matter regulated by § 1681s-2, *i.e.,* the furnishing of information to a consumer reporting agency. Therefore, any such claims, even those alleging willfulness, are preempted under § 1681t(b)(1)(F).[9] *See Chambliss v. Bank of America, N.A.*, 2014 WL 1287467 (M.D. Tenn.); *Megitsu v. Bank of America, N.A.*, 2012 WL 3890597 (M.D. Tenn.)

---

[9] In her Response to Defendant's Motion for Summary Judgment, Plaintiff refers to her position that Defendant's "novel theory of contract law . . . is in direct violation of the Tennessee Consumer Protection Law . . . ." Docket No. 69, p. 2. Plaintiff also refers to T.C.A. § 47-18-805 regarding "Liability of Spouse." Plaintiff apparently attempts to use these allegations as a shield, rather than as a sword, because she did not raise any such claims in her Complaint. Even if she had, they would be preempted as discussed above.

Moreover, Plaintiff has failed to establish that she suffered damages directly due to Defendant's reporting. As discussed above, Plaintiff's credit report as of September 5, 2003 reflected a FICO score of 531, a charged off account from other creditors, and accounts in collection. Defendant did not report the account at issue as delinquent until February 2011, some eight years later. At that time, Plaintiff's household revolving debt was approximately $83,000, both Plaintiff and John P. Mayo used 12 credit cards that were 53% utilized, and payments on the accounts over the previous 12 months were flat. Absent any evidence in a form required by Fed. R. Civ. P. 56 that Plaintiff suffered actual damage resulting directly from Defendant's actions, Plaintiff cannot recover.

In light of the foregoing, Plaintiff cannot prevail and Defendant is entitled to a judgment as a matter of law. Defendant's Motion should, therefore, be GRANTED.

### III. Conclusion

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket No. 42) be DENIED, and that Defendant's Motion for Summary Judgment (Docket No. 61) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

ــــــــــــــــــــــــــــــــــــــــــــــــــــــــــــ
E. CLIFTON KNOWLES
United States Magistrate Judge